IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RUSSELL D. WOODS,** | : | |
|     **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-CV-2178** |
| | : | |
| **SUPERINTENDENT J. TERRA,** *et al.*, | : | |
|     **Defendants.** | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                                              **December 9, 2024**

Plaintiff Russell Woods, a Pennsylvania state inmate, filed a pro se complaint pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 accusing Defendants of violating his constitutional rights during his incarceration at the State Correctional Institute at Phoenix ("SCI-Phoenix").[1] The Defendants, who are various corrections officers, supervisory personnel, and the Superintendent of SCI-Phoenix move to dismiss all but one of the counts against them.[2] For the reasons set forth below,

---

[1]   At the time he filed his complaint in June 2023, Woods was confined in the State Correctional Institution - Houtzdale (SCI-Houtzdale). (Compl., ¶ 3, ECF No. 1).

[2]   Woods identifies the Defendants as: (1) J. Terra, the Superintendent at SCI-Phoenix; (2) James C. Barnacle, the Director of the Bureau of Investigations and Intelligence (B.I.I.) of the Pennsylvania Department of Corrections (DOC); (3) Lieutenant C. Hartless, a Lieutenant/C.O. 3 with the DOC responsible for investigating inmate abuse allegations within the security department at SCI-Phoenix; (4) Sgt. Baity, a C.O. 2/Sgt. with the DOC responsible for the care, custody, and control of all inmates at SCI-Phoenix; (5) C.O. 1 Wendlerhouse, a Correctional Officer with the DOC responsible for the care, custody, and control of all inmates within SCI-Phoenix; (6) John/Jane Doe, a District Attorney responsible for investigating and prosecuting criminal charges; and (7) J. Yodis, a C/04/Captain/Hearing Examiner with the DOC responsible for hearing and adjudicating institutional misconducts. Defendants Terra, Barnacle, Hartless, Doe, and Yodis are sued in their official and individual capacities; Defendants Baity and Wendlerhouse are sued in their individual capacities only. (Compl., ¶¶4-10).

1

the motion shall be granted and Plaintiff's claims against all of the defendants shall be dismissed with the exception of the claims against Defendant Wendlerhouse in his individual capacity only.

I.     **FACTUAL BACKGROUND**

Woods' claims arise out of an incident that occurred on May 25, 2022 in which he was allegedly assaulted by Defendant, Corrections Officer (CO) Wendlerhouse, who struck him with five "closed fist" blows to the face while he was being confined in a restraint chair. (Id. ¶¶ 1, 11, 13). Woods alleges the assault was witnessed by Lt. Pantoya, who promptly reported it to the shift commander because he "did not like what he had seen." In response, Woods "then filed an "Inmate Abuse Allegation Grievance" regarding Wendlerhouse's assault, which occurred "near the triage area." (Id. ¶ 13). Woods suffered a "split/laceration" over his eye, and a "busted lip and chronic pain to [his] neck area" from this assault. (Id. ¶ 22).

Woods also avers that on March 17, 2022, he received an institutional DC-141 misconduct filed by Sgt. Baity falsely stating that he (Woods) assaulted C.O. Wendlerhouse. (Id. ¶ 12). He was subsequently found guilty of this "staff assault that [he] did not do" by Hearing Officer Yodis on March 25, 2022 in a hearing at which he was not present, because Yodis purportedly conspired with Wendlerhouse. (Id. ¶ 14). "Sometime in November of 2022," Woods contends he "received notifications via legal mail from John/Jane Doe 1 District Attorney, that he was being charged with assault charges," but these charges were subsequently dismissed with prejudice by the courts after review of "videofootage evidence" in February 2023. (Id. ¶ 16). The complaint further asserts: "James C. Barnacle, John/Jane Doe 1, Lieutenant C. Hartless did commit violations of 'False Imprisonment' by submitting 'False Affidavits' to maliciously, and sadistically prosecute plaintiff." (Id. ¶ 19). Finally, Woods claims all Defendants "had personal knowledge of the aforesaid misconduct incidents, and acquiesced in said misconduct incident." (Id. ¶ 18).

2

Woods' complaint contains five claims for relief: "cruel and unusual punishment (excessive force 8th Amendment)" (Count 1), "civil conspiracy (14th Amendment)" (Count 2), "false imprisonment" (Count 3), "8th Amendment (deliberate indifference)" (Count 4), and "intentional infliction of emotional distress (IIED claim)" (Count 5). In their partial motion to dismiss, Defendants Barnacle, Yodis, Terra, Hartless, and Baity ask the Court to dismiss all the claims against them with prejudice as well as Counts 2 – 5 in their entirety.

## II. LEGAL STANDARDS

The Defendants invoke Fed. R. Civ. P. 12(b)(6) in moving for partial dismissal of Woods' complaint. Under that Rule, "[t]he question is 'not whether [the plaintiff] will ultimately prevail, but whether [the] complaint [is] sufficient to cross the federal court's [pleading] threshold," which "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Renfro v. Unisys Corp., 671 F.3d 314, 320 (3d Cir. 2011) (quoting Skinner v. Switzer, 562 U.S. 521, 530 (3d Cir. 2011)). A complaint does not need detailed factual allegations and "need not pin plaintiff's claim for relief to a precise legal theory," but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. In deciding whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accepting all factual allegations as true and drawing all reasonable inferences in favor of the non-moving party, and must then determine whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Cheney v. Daily News L.P., 654 F. App'x. 578, 580 (3d Cir. 2016); Pearson v. Sec'y Dep't of Corr., 775 F.3d 598, 604 (3d Cir. 2015). Stated otherwise, to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). When assessing the sufficiency of the complaint, courts must pay attention to the factual context of the claim, including the underlying substantive law. Mator v. Wesco Distrib., 102 F.4th 172, 183-184 (3d Cir. 2024) (internal quotation marks and citations omitted). And of course, pro se pleadings are held to less stringent standards than those prepared by counsel and must be liberally construed. Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). Accordingly, while courts are to apply the relevant legal principles even when a complaint fails to name them, pro se litigants "cannot flout procedural rules" and "still must allege sufficient facts in their complaints to support a claim." Id. at 244, 245.

## III. DISCUSSION

### A. Federal Claims

Woods first alleges claims against all the Defendants under Federal law – 42 U.S.C. §§ 1983, 1985 and 1986. Specifically, in the first paragraph of his complaint, Woods alleges "[t]his civil action is authorized" by these Sections "to redress the deprivations under the color of state law of the rights secured by the United States, and acts of Congress." It has been noted that "neither Section 1983 nor Section 1985 by themselves creates any substantive rights," but instead act "as a vehicle to vindicate other federal rights and privileges" established elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985); Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 376 (1979). Section 1986, in turn "constitutes an additional safeguard for those rights protected under . . . § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985.'" Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980)).

4

To plead a § 1983 claim, a Plaintiff must allege two essential elements: (1) that the conduct complained of was committed by a person acting under state law; and (2) that the conduct deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. Schneyder v. Smith 653 F.3d 313, 318-319 (3d Cir. 2011) (internal citations omitted). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and therefore a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998). These allegations may take the form of "describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015) (internal quotation and citation omitted).

Similarly, § 1985(3)[3] creates a private right of action against persons who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." Mintz v. Pennsylvania, Civ. A. No. 99-3543, 2000 U.S. Dist. LEXIS 4231 at *6 (E.D. Pa. Mar. 29, 2000) (internal quotation marks and citation omitted). "A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals" and a complaint "containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3)" will not suffice. Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1971). The following elements must be alleged to state a claim under § 1985(3):

---

[3] While the Plaintiff is clearly alleging violations of his civil and constitutional rights under the Eighth and Fourteenth Amendments pursuant to § 1983, the only allegations which could arguably be interpreted as invoking § 1985 are those averring a conspiracy between Hearing Officer Yodis, Sgt. Baity and C.O. Wendlerhouse to find him guilty of a staff assault. (Compl. ¶¶ 14, 25). Hence, I find the only subsection of § 1985 which could arguably be applicable in this matter is subsection (3).

"(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-829 (1983)).

Finally, a § 1986 plaintiff must plead and show: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed. Clark, 20 F.3d at 1295.

Woods' complaint contains no factual allegations showing there was an "invidious, purposeful, and intentionally discriminatory" conspiracy between Defendants Wendlerhouse, Baity and Yodis to deprive him of the equal protection or equal privileges and immunities under the law, nor does he aver any act in furtherance of the conspiracy, or that he suffered any injury to his person or property as a result. At most, the complaint contains "mere conclusory allegations" that the object of the conspiracy was to find him guilty of an assault that he did not commit. Woods' thereby fails to plead claims that fall under the purview of §§ 1985 and 1986, and his claims shall therefore be analyzed under § 1983 only.

1. **Official capacity claims**

Defendants first seek to dismiss all of Woods' claims against them to the extent that he seeks to hold them liable in their "official" capacities for the reason that they are barred by immunity conferred by the Eleventh Amendment.

In general, the Eleventh Amendment enacts a sovereign immunity from suit – not a "nonwaivable limit on the federal judiciary's subject-matter jurisdiction." Idaho v. Coeur D'Alene Tribe, 521 U.S. 261, 267 (1997). However, a state "can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it." Id. This Eleventh Amendment protection extends to suits brought against a state by its own citizens. Id. at 268. And "[w]hen suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake." Id. at 269. When an action "is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants;" this is to be determined not just by looking at the titles of parties named, "but by the essential nature and effect of the proceeding as it appears from the entire record." Id. at 278 (internal quotation marks and citations omitted).

In keeping with this rationale and applying it specifically to § 1983 actions, the Supreme Court has declared that a state is not a "person" within the meaning of § 1983. Hafer v. Melo, 912 F.2d 628, 635 (3d Cir. 1990) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). On the other hand, because personal capacity suits against state officials are actions against the individual and not the state, state officials who are sued for damages in their personal capacities are "persons" under § 1983 and are therefore subject to suit. Id. In other words, while "state officials literally are persons," the law holds that a suit against a state official in his or her official capacity is not a suit against the official but is rather a suit against the official's office and is therefore no different from a suit against the state itself. Will, 491 U.S. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985) and Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-

capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'").

In this case, as to each Defendant except Wendlerhouse,[4] Woods begins by alleging they all are employed in one way or another by the Pennsylvania Department of Corrections and that it was in this capacity, as well as in their capacities as individuals, that they violated his constitutional rights. (Compl. ¶¶ 4-7, 9-10). The Pennsylvania Department of Corrections is an administrative department of the Commonwealth of Pennsylvania pursuant to 71 P.S. § 61 and § 732-102. As such, Pennsylvania DOC employees share in the Commonwealth's Eleventh Amendment immunity when they are sued in their official capacities. Turner v. AG Pa., 505 F. App'x 95, 98-99 (3d Cir. Dec. 3, 2012); Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Thus, to the extent Woods is advancing claims against the Defendants in their *official* capacities, the motion to dismiss is granted and all these claims are dismissed with prejudice.

### 2. Exhaustion of claims pursuant to the Prison Litigation Reform Act

Defendants Terra, Yodis, Barnacle, Hartless and Baity also all move to dismiss Woods' § 1983 prison conditions claims pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e (PLRA) because he failed to first exhaust his available administrative remedies.

Exhaustion is not a prerequisite to an action under § 1983. Patsy v. Bd. of Regents, 457 U.S. 496, 501 (1982). Where, however, the plaintiff is incarcerated and is advancing a claim which arises out of prison conditions whether under § 1983 or any other federal law, "no action shall be brought . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

---

[4] Wendlerhouse is alleged to have acted solely in his individual capacity. (Compl.¶ 8).

8

other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Indeed, the Supreme Court has held that prisoners are required to exhaust all "available" remedies before pursuing any suit challenging prison conditions whether under § 1983 or not, regardless of whether they do or do not meet federal standards, and even where the relief sought – such as monetary damages – cannot be granted by the administrative process. Woodford v. Ngo, 548 U.S. 81, 85 (2006); Nyhuis v. Reno, 204 F.3d 65, 75, n. 10 (3d Cir. 2000). Exhaustion must be "proper," which means all steps that an agency holds out must be used, so that the agency can address the issues on the merits. Woodford, 548 U.S. at 90. Proper exhaustion thus "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. While the deadlines and level of detail necessary for a grievance to comply with grievance procedures may vary from system to system and claim to claim, it is the prison's requirements and not the PLRA that define the boundaries of proper exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). Regardless, a grievance must provide enough information and details to "at least alert the prison to the nature of the wrong for which redress is sought." Mack v. Loretto, 839 F.3d 286, 295 (3d Cir. 2016).

The Pennsylvania Department of Corrections has maintained, at least since May 1, 2015, an Inmate Grievance System which affords "every individual committed to its custody . . . access to a formal procedure through which to seek resolution of problems or other issues of concern arising during confinement." PA DOC Policy Statement of May 1, 2015, DC-ADM 804. See also, Talley v. Constanzo, No. 19-2650, 2022 U.S. App. LEXIS 33180 at *7, n.3 (3d Cir. Dec. 1, 2022). Under Section 1(A)(11) of DC-ADM 804:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.

9

    a.    The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.

    b.    The inmate shall identify individuals directly involved in the event.

    c.    The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

    d.    If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

As reflected in the documents attached to Defendants' motion[5], Woods submitted an "Official Inmate Grievance" under DC-ADM 804 on May 26, 2022 based on the following allegations:

> I am filing this because I was assaulted by CO.I Winterhouse while in the restraint chair near the triage area. Also, Lt. Pantoya witnessed the attack on me. I was punched in the face. This account was reported to the shift commander that same night, because Lt. Pantoya did not like what he had seen. <u>Relief</u>: I would like a separation of all "B" Block staff, especially CO.I Winterhouse because I fear retaliation due to the attack. Also, I would like $300,000 in relief for the assault.

(Mem. of Law in Supp. Defs.' Part. Mot. to Dismiss Pl.'s Compl., Ex. 1, Griev. No. 982465, ECF No. 25-1).

The Grievance was denied following initial review by Grievance Officer Hartless on January 3, 2023, and Woods appealed on January 27, 2023. (<u>Id.</u>) The denial was upheld by

---

[5] "Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits." <u>M & M Stone Co. v. Hornberger</u>, Civ. No. 07-4784, 2009 U.S. Dist. LEXIS 91577 at * 3 (E.D. Pa. Sept. 30, 2009) (citing <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992)). However, there are certain kinds of evidence beyond a complaint which may be considered in deciding a Rule 12(b)(6) motion to dismiss. These include public records such as "court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies, documents essential to a plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case." <u>Id.</u> at *3 - *4 (citing <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384, nn. 1-2 (3d Cir. 1995)); <u>J/H Real Estate v. Abramson</u>, 901 F. Supp. 952, 955 (E.D. Pa. 1995).

Facility Manager Terra on February 27, 2023, who noted the Internal Security Department at SCI Phoenix investigated Woods' allegations but found it unsubstantiated and informed Woods that no video was available for review. (Id.). Woods took an "Appeal to Final Review" on March 8, 2023, but in the Final Appeal Decision issued by Chief Grievance Officer D. Varner, the grievance was again found unsubstantiated and his request for relief was denied. (Id.). Thus, Woods clearly administratively exhausted his claim against Defendant Wendlerhouse. However, notwithstanding that Defendants Terra and Hartless participated in the process of reviewing Woods' grievance against Wendlerhouse, there is no evidence that he ever filed a separate grievance against them or against Yodis, Barncale or Baity; rather, his grievance identified CO.1 Wendlerhouse[6] alone. Woods thus failed to exhaust his administrative remedies with regard to Terra, Yodis, Baity, Hartless and Barnacle. Consequently, his claims against these defendants shall be dismissed with prejudice pursuant to the PLRA.

### 3.  Individual capacity claims

Woods also seeks to hold the Defendants liable under § 1983 in their individual capacities. Of course, the only remaining defendant under § 1983 is Corrections Officer Wendlerhouse, who is named solely in his individual capacity. To maintain a § 1983 action generally, a plaintiff must not only allege the violation of a right secured by the Constitution and laws of the United States, but must also show that the defendant was acting under color of state law when he committed the alleged Constitutional deprivations. West v. Atkins, 487 U.S. 42, 48 (1988); Garrett v. Wexford Health, 938 F.3d 69, 94 (3d Cir. 2019).

---

[6]  Wendlerhouse was identified in the grievance and in the review responses and final decision as "Winterhouse." Because he is identified as "Wendlerhouse" in the complaint, it is assumed this is the correct iteration of this defendant's name.

"The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." Chavarriaga, 806 F.3d at 222 (quoting Nicini v. Mora, 212 F.3d 798, 806 (3d Cir. 2000). Woods asserts Wendlerhouse violated his Eighth Amendment rights to be free from excessive force and cruel and unusual punishment, and that his Fourteenth Amendment rights were violated by Wendlerhouse, Yodis and Baity's conspiracy to find him guilty of an assault under false pretenses.

The Eighth Amendment does indeed prohibit the imposition of "cruel and unusual punishment." U.S. CONST. amend. VIII. This prohibition restrains prison officials from certain actions (such as use of excessive force against prisoners) and imposes on them a duty to provide "humane conditions of confinement." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 256 (3d Cir. 2010) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994). "That is, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates." Id. (internal quotation marks and citation omitted).

For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must result in the "denial of [the] minimal civilized measure of life's necessities," and a condition of confinement violates the Eighth Amendment only if it is "so reprehensible as to be deemed inhumane under contemporary standards" or "deprives an inmate of the minimal civilized measure of the necessities of life." McKinney v. Piazza, 2022 U.S. Dist. LEXIS 225053 at *19 (D. N.J. Dec. 14, 2022) (quoting Farmer, 511 U.S. at 835); Dickens v. Taylor, 464 F. Supp. 2d 341, 348 (D. Del. 2006). In cases charging prison officials with excessive force, an Eighth Amendment claimant must show that officials applied force "maliciously and sadistically for the very purpose

12

of causing harm," or used force "with a knowing willingness that harm occur." Farmer, 511 U.S. at 835-836 (quoting Hudson v. McMillian, 503 U.S. 1, 6, 7 (1992)).  To violate the Cruel and Unusual Punishments Clause in prison-conditions cases, a prison official must have the "sufficiently culpable state of mind" whereby he is "deliberately indifferent" to an inmate's health or safety.  Farmer, 511 U.S. at 834.  Thus, it is only where a prison official knows that an inmate is facing a substantial risk of serious harm as a result of a condition or conditions in a prison and disregards that risk by failing to take reasonable measures to abate it, that he may be held liable. Id. at 847.

In order to demonstrate a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law."  Royster v. Beard, No.  08-3353, 308 F. App'x 576, 579 (3d Cir. Jan. 29, 2009) (quoting Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds*, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003)).  Hence to state a claim for § 1983 conspiracy, two elements must be pled: (1) the existence of a conspiracy involving state action, and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.  Eichelman v. Lancaster County, 510 F. Supp. 2d 377, 392 (E.D. Pa. 2007).

Giving Woods' allegations a broad and liberal reading, by alleging he was assaulted through several closed-fist blows and that Wendlerhouse conspired with Yodis and Baity to convict Woods of an assault that he did not commit, I find he has adequately pled claims under § 1983 for conspiracy and cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.  Accordingly, these claims shall be permitted to proceed as against Wendlerhouse only.

B.  **State Law Claims**

Woods also seeks to hold the defendants liable under the Pennsylvania common law theories of false imprisonment and intentional infliction of emotional distress. Defendants seek dismissal of these claims on the basis of sovereign immunity.

Under 42 Pa. C.S. § 8521, an agency of the Commonwealth of Pennsylvania and/or any employee acting within the scope of their employment for that agency is immune from suit. This immunity is waived, "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in ten limited instances. Those are: (1) vehicle liability, (2) medical - professional liability, (3) care, custody, or control of personal property, (4) Commonwealth real estate, highways, and sidewalks, (5) potholes and other dangerous conditions of highways under the jurisdiction of a Commonwealth agency, (6) care, custody, or control of animals, (7) liquor store sales, (8) National Guard activities, (9) toxoids and vaccines, and (10) sexual abuse. 42 Pa. C.S. § 8522(b).

Again, Woods has alleged that the defendants were all acting within the course and scope of their employment insofar as they were acting in their "official capacities," save for Defendant Wendlerhouse. Only Defendants Hartless, Barnacle and John/Jane Doe are named in Count 3, as the defendants who falsely imprisoned him, and he charges only Defendants Wendlerhouse, Baity, Terra and John/Jane Doe with the tort of intentional infliction of emotional distress in Count 5. Given that neither false imprisonment nor intentional infliction of emotional distress fall within any of the exceptions enumerated in § 8522(b), Woods' claims against Baity, Hartless, Barnacle, and Terra are all dismissed. Because Wendlerhouse was alleged to have been acting only in his

14

individual capacity, Woods' claim against him for intentional infliction of emotional distress may proceed.

### D. CONCLUSION

For all of the reasons outlined, Defendants' Partial Motion to Dismiss the Plaintiff's Complaint is **GRANTED**, and all of Woods' claims against Defendants Barnacle, Yodis, Terra, Hartless and Baity are **DISMISSED** with prejudice, as are Counts 2, 3, and 4 in their entirety. Woods' claims against Defendant Wendlerhouse in his individual capacity under § 1983 for excessive force and cruel and unusual punishment in violation of the Eighth Amendment as set forth in Count I, and his claim against Wendlerhouse individually in Count 5 for intentional infliction of emotional distress shall be permitted to go forward.

An appropriate Order follows.